TALLY HO, The (O'CONNELL v.). See Case No. 10,418

TALMADGE (MAURY v.). See Case No. 9,-315.

TALMAN (WEST v.) See Case No. 17,426.

TAMINEND, The (BERGEN v.). See Case No. 1,339.

## ·Case No. 13,741.

### The TAMPICO.

[Blatchf. Pr. Cas. 554.] [1]

District Court, S. D. New York.  Oct. 16, 1863.

PRIZE—VIOLATION OF BLOCKADE.

Vessel and cargo condemned for a violation of the blockade.

In admiralty.

BETTS, District Judge. This vessel and cargo were captured by the United States ship-of-war Cayuga, April 3, 1863, off the coast of Texas, just after she escaped from Sabine Pass, a blockaded port. The libel was filed May 25, 1863, and the monition issued thereon was returned in court June 16th thereafter. At that time the British consul appeared in open court, and interposed a claim of ownership to the vessel and cargo in behalf of British subjects. This appearance and claim was no further prosecuted in court; and the proofs in the cause having been submitted to the consideration of the court, on motion of the United States attorney for a decree of condemnation and forfeiture of the vessel and cargo as prize of war the evidence produced by the libellants in support of the motion has been examined and considered with a view to ascertain the character and conduct of the vessel and her cargo.

It appears upon the vessel's papers that she was built in New York, in 1856. No disposition of the right and title out of the then owner is proved by the papers, other than an informal statement by David J. Jolly, given at Tampico, June 25, that he is a British subject, and a further declaration of the British consul at Tampico, June 26, attached to a provisional register of the vessel at that port, to the said Jolly, asserting that Jolly had purchased the vessel, and that Harry Shepherd was her master. No proof is exhibited, on the papers of the vessel and otherwise, of any consideration paid on the sale of the vessel, or as to who was the vender, or as to the time or place at which the sale was made, or as to the execution of a bill of sale. Thomas Paulson, who was the master of the vessel when the seizure was made, testifies, on his examination in preparatorio, that the vessel was captured about 35 miles from Sabine Pass, and sent into New Orleans; that she was seized for running out of Sabine Pass in evasion of the blockade: that the British consul at Tampico appointed the witness master of the vessel; that he took possession of her there; that the crew were all shipped there; that the vessel had a clearance from the collector of Sabine and was bound to Honduras and Matamoras; that Jolly is a British subject, and lives at Tampico; that the cargo was laden on board at Sabine; that the laders resided at Sabine;

that the witness knew of the blockade; that the vessel passed out of the port at 12 o'clock in the night, and was seized at 5 o'clock the next morning; that he had seen the blockading squadron before running out of the port; and that he sailed out intending to elude the blockade. The mate, Lawrence, testifies that the master of the vessel resides at Houston, Texas; that he does not know to what port or place the vessel was bound, or where the voyage was to end; that the vessel was captured about daylight in the morning; that he knew that the port was under blockade; that the vessel attempted to elude it; and that the pilot told him and the captain that the time was a good one to get out, the blockading vessels not being in sight. Nagle, the supercargo and agent of the cargo, says that the laders of it were residents in Houston, Texas, and that he believes that the cargo is owned in Liverpool.

The evidence all tends to one conclusion: That the whole enterprise, in the procurement of the vessel, her lading, and her despatch, was undertaken with knowledge of its illegality, and with the purpose, on the part of all the parties interested in it, to violate the blockade of the port of Sabine Pass. The vessel and cargo are, for that cause, subject to forfeiture. Besides, the alleged owner, Jolly, the claimant of the vessel, establishes by proof no legal or equitable title to the vessel. Even if he had paid a fair consideration, and obtained her conveyance to him by a regular bill of sale, he would not be allowed to purchase an enemy vessel in an enemy country, and employ her in commerce and trade in the productions and property of the enemy's country. Upt. Mar. W. 146–151; Wheat. Capt. Mar. c. 3. The trade he was pursuing was accordingly illegitimate as to him, and his interest in the vessel is liable to confiscation.

There must therefore be a judgment of condemnation and forfeiture of the vessel and cargo seized.